**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**ST. THOMAS/ST. JOHN DIVISION**

| | | |
|---|---|---|
| **KATHY EASTERDAY** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | **NO. 3:25-16** |
| | **:** | |
| **ITRON, INC., and VIRGIN ISLANDS** | **:** | |
| **WATER & POWER AUTHORITY** | **:** | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                **July 31, 2026**

A power utility customer sues her utility provider Virgin Islands Water & Power Authority

and one of its vendors Itron, Inc. alleging the Authority terminated her power without due process

after allegedly excessive bills and a product defect in a power meter manufactured by Itron caused

a fire to her personal property around the same time as the Authority cut off her power for lack of

payment. We dismissed this customer's earlier attempts to plead these claims without prejudice.

The customer returns with her third attempt at pleading a products liability claim against vendor

Itron and a procedural due process claim against the Authority. We find the customer now barely

pleads sufficient facts allowing us to plausibly infer a procedural due process claim against the

Authority relating to losing power subject to defenses not presently before us. We also find the

customer pleads a limited products liability claim arising from harm to her personal property (a

power base and wiring) which caused a loss of less than $5,000 with no pleaded basis for punitive

damages.

### I.    Alleged Facts

Public utility Virgin Islands Water and Power Authority contracted with Itron, Inc. in 2015

to replace its customers' analog meters with Itron's digital smart meters.[1] Itron manufactured the

two smart meters the Authority installed at Kathy Easterday's St. Thomas home.[2] The Authority owns the meters but Ms. Easterday owns the power base and wiring underneath them.[3]

### Ms. Easterday's billing concerns.

Eighty-three-year-old Kathy Easterday lives on a monthly social security check under $900.[4] The Authority began sending monthly electric bills over $600 at an unpleaded time.[5] Her modest use of lights, oxygen equipment, and a few weekly showers cannot explain bills of this size.[6] She fell behind on her payments at an unpleaded time.[7] She completed the Authority's medical exemption form at another unpleaded time hoping to protect her service.[8]

Ms. Easterday called the Authority and the Public Services Commission about her bills but she does not plead when she made the calls.[9] Public Services Commission employees Ms. Hendricks and Ms. Davis inspected her smart meter on June 16, 2023 in response to her complaints.[10] Neither the Commission nor the Authority supplied her with inspection findings, conclusions, or a written report.[11] The Authority never provided her notice of a complaint form or the Ratepayers' Bill of Rights or the Commission complaint process until Fall 2024.[12] The Authority's customer service instead referred her to a federal energy assistance program and provided wrong advice about sending her bills to the program.[13]

### Ms. Easterday lost power on January 27, 2025.

Ms. Easterday lost power on January 27, 2025.[14] Ms. Easterday depends on oxygen equipment to breathe.[15] Her oxygen equipment's backup battery lasts two hours without electricity.[16] She left her home seeking help after a few hours without power.[17] She collapsed at a roadside and an ambulance took her to the hospital for emergency treatment.[18] "Good Samaritan" Susan Kinder then moved Ms. Easterday into an apartment attached to Ms. Kinder's home.[19]

### *Ms. Easterday suffered a fire at her property at an unpleaded time.*

A fire damaged the Itron meter along with Ms. Easterday's power base and wiring.[20] Ms. Easterday does not plead when the fire occurred. She does not plead whether the fire caused the January 27, 2025 outage. Her allegations place the fire no later than early February 2025. Customer Service Supervisor Marlene Francis possessed a photograph of Ms. Easterday's damaged electrical base when Ms. Easterday visited the Authority's offices the week after her January hospital stay.[21] Workers finished rebuilding the power base by the time the Authority installed a second meter on February 25, 2025.[22]

Ms. Easterday did not know about the fire when it happened.[23] She learned of the fire only after an expert assessed the damage at an unpleaded time.[24] The Authority removed the Itron meter from her power base after the fire.[25] The Authority also removed her burned wiring and has yet to return it.[26] Rebuilding the power base and installing new wiring cost her about $2,000 in labor with donated materials.[27]

### *Ms. Easterday visits the Authority's offices.*

Ms. Kinder took Ms. Easterday to the Authority's offices the week after her hospital stay.[28] Customer Service Supervisor Francis produced a photograph of the electrical base and explained Ms. Easterday needed a replacement bolt before the Authority could install a new meter or review her billing concerns.[29] Customer Service Supervisor Francis did not mention a fire.[30]

Chief Executive Officer Karl Knight approached Ms. Easterday and Ms. Kinder as they left the Authority's offices.[31] Chief Executive Officer Knight told Ms. Easterday the disconnection never should have occurred, recommended review of her billing records, and provided his email address for future updates.[32]

***The Authority installed a second Itron meter which failed within thirty days.***

The Authority installed a second Itron meter on Ms. Easterday's rebuilt power base on or about February 25, 2025 and restored her power within two days.[33] Condensation clouded the second meter within thirty days and the Authority's field technician could not read it.[34] The Authority has since issued only estimated bills including a bill marked "Estimate" charging $288 for about fifteen days of service between January 11, 2025 and February 11, 2025.[35]

***Ms. Easterday sues Itron and the Authority.***

Ms. Easterday sued Itron and the Authority.[36] We dismissed her amended Complaint several weeks ago.[37] We dismissed her tort claims against Itron because she did not plead facts allowing us to plausibly infer a meter defect caused recoverable harm.[38] Her overbilling allegations described economic losses, her fire allegations described harm to Itron's meter alone, and her physical injury allegations did not connect a defect to her injuries.[39] We also dismissed her claims against Itron for punitive damages.[40] We dismissed her procedural due process claim against the Authority because she did not plead when she submitted her medical exemption form, when she complained about the bills, or which employees denied her review before the disconnection.[41] We granted Ms. Easterday a third opportunity to plead facts supporting her claims.[42]

She returns with amended strict liability and negligent manufacturing claims against Itron seeking recovery for financial losses resulting from alleged overbilling, fire damage involving her power base and wiring, and physical injuries after the loss of her electric service.[43] She also again asks for punitive damages. [44] Ms. Easterday also returns with a procedural due process claim against the Authority for ending her service without adequate notice or a meaningful opportunity to challenge her disputed bills.[45]

3

## II.   Analysis

Itron and the Authority move to dismiss Ms. Easterday's claims with prejudice.[46] We grant Itron's motion in part. Ms. Easterday now pleads facts permitting a reasonable inference a defective Itron meter damaged her personal property separate from the meter itself owned by Itron. We allow her strict liability and negligent manufacturing claims to proceed only as to alleged fire damage involving her power base and wiring. Her remaining tort theories repeat deficiencies earlier identified and we dismiss them again.

We deny the Authority's motion to dismiss Ms. Easterday's procedural due process claim. She pleads a protected interest in due process before electric service termination, which includes allowing her a meaningful opportunity to dispute bills before termination. We remain largely unaware of when she met with the Authority's agents but Ms. Easterday now pleads limited facts as to the timing. We accept her allegations as true and draw reasonable inferences in her favor. Ms. Easterday states a plausible due process claim subject to defenses not within today's scope of review. We leave the questions as to whether the Authority provided constitutionally adequate process and whether Ms. Easterday used the procedures available to her for a more developed record.

### A. Ms. Easterday may proceed on her strict liability claim only as to fire harm to her power base and wiring.

Itron again asks us to dismiss Ms. Easterday's strict liability claim.[47] Itron argues Ms. Easterday still does not plead facts allowing us to plausibly infer a defect in its smart meters caused a recoverable injury.[48] Itron also argues Virgin Islands law prevents recovery for her alleged economic losses.[49] Ms. Easterday responds she identifies specific defects in Itron's meters, alleges fire damage to property she owns, and supports those allegations with legislative testimony and consultant reports.[50]

4

We agree with Itron in part. A company selling or distributing a defective product remains strictly liable for harm a defect causes.[51] Different standards are applied for manufacturing defects, design defects, and defects based on inadequate warnings or instructions.[52]

Ms. Easterday must plead facts allowing us to plausibly infer a defect caused harm to her person or property regardless of her chosen defect theory.[53] Ms. Easterday alleges three categories of harm: financial losses from alleged overbilling, fire damage involving her power base and wiring, and physical injuries following termination of electric service.[54] We address them in turn.

**1. Ms. Easterday pleads facts allowing us to plausibly infer a defect caused fire harm to her power base and wiring.**

Itron argues Ms. Easterday still does not plead facts allowing us to plausibly infer a defect caused damage to property other than Itron's meter. [55] Ms. Easterday earlier alleged the fire damaged only Itron's meter, meter base, and wiring. [56] But she now alleges she owns the base, which she now calls a power base, and wiring. [57] She alleges the fire damaged this property and rebuilding cost her approximately $2,000 in labor.[58] Itron responds donors supplied the rebuilding materials and Ms. Easterday does not allege she paid the labor cost herself.[59] But Ms. Easterday alleges fire destroyed property she owns.[60] Claiming harm to her property states a cognizable injury at this stage.[61] The measure of her recoverable damages awaits a more developed record.

Ms. Easterday also expands her allegations regarding the alleged defect. She alleges Authority officials identified defective batteries and capacitors as fire risks, Black & Veatch traced widespread failures to degraded capacitors, and Ernst & Young reported faulty internal components disabled much of the Authority's smart-meter system. [62] Itron argues these allegations describe smart meters as a category rather than the meters installed at Ms. Easterday's home. But Ms. Easterday pleads a fire destroyed the first meter and her power base and the second meter failed within thirty days of its installation from condensation.[63] Widespread component failures

5

identified by the Authority's consultants combined with two failures of the meters at her home permit a plausible inference of a defect in her meters.

We accept her allegations as true. Ms. Easterday's allegations allow us to plausibly infer the alleged defect damaged property Ms. Easterday owns. Those allegations allow Ms. Easterday to proceed upon this part of her strict liability claim.

### 2. Ms. Easterday may not recover for overbilling or her physical injuries under a strict liability theory against Itron.

Itron argues Ms. Easterday cannot recover from it for alleged overbilling.[64] We agree. Ms. Easterday alleges inaccurate meter readings produced inflated and estimated electric bills. [65] Those allegations describe economic losses rather than personal injury or property damage. Virgin Islands law does not permit recovery under strict liability for purely economic losses.[66] We dismissed this portion of Ms. Easterday's claims two months ago.[67] She again alleges the same injury. We dismiss this portion of her strict liability claim.

Itron also argues Ms. Easterday still does not plead facts allowing us to plausibly infer a defect caused her physical injuries.[68] We agree.

Ms. Easterday alleges inaccurate meter readings produced higher bills resulting in nonpayment, nonpayment led to termination of electric service, and termination forced her from her home seeking assistance.[69] We dismissed this portion of Ms. Easterday's claim last month because those allegations did not permit a reasonable inference a meter defect caused her injuries.[70] Ms. Easterday pleads the same chain of events between the alleged defect and her injuries. Her own allegations identify other causes including the Authority's billing judgments and its decision to disconnect her service.[71] Those intervening acts break the natural and continuous sequence between the alleged defect and her injuries. We cannot plausibly infer the meter defect caused her physical injuries. [72] We dismiss this portion of her strict liability claim.

Ms. Easterday may proceed only upon the strict liability claim seeking recovery for alleged fire damage involving her power base and wiring.

**B. Ms. Easterday may proceed on her negligent manufacturing claim only as to fire harm to her power base and wiring.**

Itron asks us to dismiss Ms. Easterday's negligent manufacturing claim.[73] Itron argues Ms. Easterday still does not plead facts allowing us to plausibly infer Itron breached a duty owed to her or caused a recoverable injury.[74] Itron also argues Ms. Easterday cannot save her claim by asking us to infer negligence from the fire itself.[75] Ms. Easterday responds she identifies negligent conduct by Itron.[76] She argues Itron distributed meters containing defective batteries and capacitors without adequate testing or inspection.[77] She also argues Authority testimony and consultant reports support a reasonable inference Itron failed to exercise reasonable care before distributing its meters. We agree with Itron in part.

To state a negligent manufacturing claim, Ms. Easterday must plead facts allowing us to plausibly infer Itron owed her a legal duty of care and it breached the duty.[78] We dismissed Ms. Easterday's negligence claim last month because she did not plead facts showing Itron's conduct caused her harm she can recover for under a negligence theory.[79] But Ms. Easterday now pleads facts stating a claim to recover for fire harm under a negligent manufacturing theory only.

**1. Itron owes a duty to exercise reasonable care in manufacturing and inspecting its meters.**

Ms. Easterday attempts to plead a claim to recover for fire harm under a negligent manufacturing theory. Ms. Easterday pleads Itron manufactured its meters without reasonable care. She must first show Itron as the manufacturer owed Ms. Easterday a duty to exercise reasonable care in manufacturing and inspecting its meters to avoid foreseeable harm to Ms. Easterday and her property.[80] We can only reach this conclusion after applying a *Banks* analysis. The Virgin Islands Supreme Court identifies four elements of a negligence claim: a legal duty of

care, a breach of the duty, factual and legal cause, and damages.[81] But these elements do not tell us what care a manufacturer owes the persons its products may harm. The parties do not offer, and we could not find, a colleague defining the duty a manufacturer owes in making a product under Virgin Islands Law including addressing section 395 of the Restatement (Second) of Torts.[82] We weigh three factors when we face an unresolved question of Virgin Islands common law.[83] We ask (1) whether judges here have adopted a rule before, (2) what a majority of judges elsewhere hold, and most importantly, (3) which approach is the soundest rule for the Virgin Islands.[84] This process is called a *Banks* analysis.[85] Neither party addresses the analysis. But we studied the three questions and find a manufacturer owes a duty to exercise reasonable care in manufacturing and inspecting its product to avoid foreseeable harm.[86]

### 2. Ms. Easterday pleads breach causing harm to her power base and wiring.

Ms. Easterday alleges Itron breached this duty by distributing smart meters containing defective batteries and capacitors without adequate testing or inspection.[87] And third and fourth, Ms. Easterday now alleges Itron's breaches caused a fire harming her property—her own power base and wiring—in addition to Itron's meter.[88] Ms. Easterday may proceed upon her negligent manufacturing claim seeking recovery for alleged fire damage involving her power base and wiring.

But Ms. Easterday still does not state a claim to recover for overbilling or physical injuries under a negligent manufacturing theory. She may not recover for alleged overbilling because these allegations describe purely economic losses.[89] She also does not plead facts allowing us to plausibly infer negligent manufacturing caused her physical injuries.[90] We dismiss these parts of her negligent manufacturing claim with prejudice.

**C. We dismiss Ms. Easterday's demand for punitive damages without prejudice.**

Itron asks us to dismiss Ms. Easterday's request for punitive damages.[91] It argues Ms. Easterday still does not plead facts allowing us to plausibly infer evil motive or reckless indifference.[92] Ms. Easterday responds she now alleges Itron knew its smart meters contained defective batteries and capacitors before distributing them.[93] We agree with Itron.

Punitive damages require conduct resulting from evil motive or reckless indifference to the rights of others.[94] Punitive damages require more than allegations Itron knew of a potential risk and failed to act. Rather, Ms. Easterday must plead facts permitting a plausible inference Itron acted with evil motive or consciously disregarded a known and substantial risk of harm.[95]

We dismissed Ms. Easterday's demand for punitive damages two months ago because she pleaded no facts allowing us to plausibly infer Itron acted with an evil motive or reckless indifference.[96] Ms. Easterday now alleges Itron knew its meters contained defective components before distributing them.[97] She also alleges other utilities reported smart meter failures.[98] But Ms. Easterday still does not plead facts identifying what Itron knew about the alleged defects, when Itron learned of those defects, or how Itron knowingly disregarded a substantial risk of harm. Allegations concerning other utilities and other smart meters do not permit a reasonable inference Itron acted with evil motive or reckless indifference towards Ms. Easterday. We dismiss Ms. Easterday's demand for punitive damages.

**D. Ms. Easterday may proceed on her procedural due process claim against the Authority.**

The Authority asks us to dismiss Ms. Easterday's procedural due process claim.[99] The Authority argues Ms. Easterday still does not plead facts identifying when she disputed her bills before termination, showing when she submitted her medical exemption request, identifying which Authority employee denied her review before termination, or allowing us to plausibly infer

9

procedures proved unavailable or futile.[100] The Authority also argues the Court of Appeals recently affirmed summary judgment in its favor after concluding the Authority's billing dispute procedures satisfy due process.[101] Ms. Easterday responds she now pleads additional facts concerning her communications with Authority personnel and the Public Services Commission.[102] She argues Authority personnel never meaningfully reviewed her billing complaints, never provided inspection results, and never corrected inflated bills before terminating electric service.[103] We agree with Ms. Easterday.

To state a procedural due process claim, Ms. Easterday must plead facts allowing us to plausibly infer the Authority deprived her of a protected property interest without constitutionally adequate notice or an opportunity to be heard.[104] Virgin Islands law gives utility customers a protected property interest in continued electric service because the Virgin Islands Ratepayers' Bill of Rights limits the Authority's ability to terminate service.[105] The Authority does not dispute Ms. Easterday holds this interest. Before terminating service the Authority must provide notice of the procedures available to dispute a bill and an opportunity to present the dispute to an employee empowered to review the bill and correct the error.[106]

We must draw reasonable inferences in favor of Ms. Easterday at this stage.[107] Ms. Easterday does not need to plead the date of every communication or name every employee.[108] She must plead enough to allow us to plausibly infer she sought review before termination and the Authority denied her a meaningful opportunity to be heard. Ms. Easterday now alleges she tried to meet with the Authority to discuss her bills on many occasions before termination, she made numerous telephone calls to the Authority and the Commission, and Commission employees inspected her meter on June 16, 2023 in response to those calls.[109] The inspection in June 2023 anchors her billing dispute to a time before the early 2025 termination.[110] She further alleges the

10

Authority's customer service repeatedly referred her to a federal benefits program rather than reviewing her disputed charges, and terminated her service before allowing her a meaningful opportunity to contest the bills.[111] We accept her allegations as true and may plausibly infer Ms. Easterday sought review before termination and the Authority denied her process.

The Authority further argues Ms. Easterday never used the Public Services Commission complaint process and cannot show the process would have proven futile.[112] Ms. Easterday must take advantage of the procedures available to her unless those procedures are unavailable or inadequate.[113] The adequacy and availability of those procedures depend on facts outside the Complaint.

We are mindful of Judge Sánchez's evaluation of a materially similar claim against the Authority.[114] He denied the Authority's motion to dismiss on the pleadings, allowing the ratepayers' procedural due process claim to proceed.[115] He granted summary judgment for the Authority only after discovery revealed the ratepayers had not used the available procedures or shown them inadequate.[116] The Court of Appeals affirmed summary judgment on the developed record.[117] Ms. Easterday's allegations, like the ratepayers' allegations before Judge Sánchez, suffice at the pleading stage. We may evaluate them on a more complete record.

Ms. Easterday pleaded a plausible procedural due process claim against the Authority in her third attempt. We deny the Authority's motion to dismiss today.

## III.   Conclusion

Ms. Easterday sufficiently pleads enough dates and related facts allowing us to plausibly infer a procedural due process claim against the Authority for cutting off her power subject to discovery including specifying the dates and background facts on her billing concerns and further addressing the Authority's defenses not presently before us. We grant Itron's motion to dismiss in

11

part dismissing claims for strict liability and negligent manufacturing other than for harm allegedly

caused to Ms. Easterday's power meter and wiring causing losses of less than $5,000. We dismiss

Ms. Easterday's claims for punitive damages against Itron.

---

[1] ECF 77 at 2 ¶¶ 2–3.

[2] *Id.* at 2 ¶ 4.

[3] *Id.* at 7 ¶ 26.

[4] *Id.* at 4 ¶ 15.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.* at 4 ¶ 13.

[9] *Id.* at 6 ¶ 23.

[10] *Id.* at 6 ¶ 24.

[11] *Id.*

[12] *Id.* at 5 ¶ 20; *id.* at 23 ¶ 86.

[13] *Id.* at 6 ¶ 21.

[14] *Id.* at 3 ¶ 9.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 3 ¶¶ 9–10.

[19] *Id.* at 4 ¶ 12.

[20] *Id.* at 6–7 ¶ 25; *id.* at 30 ¶ 115.

[21] *Id.* at 4 ¶¶ 13–14.

[22] *Id.* at 7 ¶ 28.

[23] *Id.* at 27–28 ¶ 103.

[24] *Id.*

[25] *Id.* at 6 ¶ 25.

[26] *Id.* at 7 ¶ 25; *id.* at 31 ¶ 119.

[27] *Id.* at 7 ¶ 26.

[28] *Id.* at 4 ¶ 13.

[29] *Id.* at 4 ¶ 14.

[30] *Id.* at 4 ¶ 15.

[31] *Id.*

[32] *Id. at* 5 ¶ 18.

[33] *Id.* at 7 ¶ 28.

[34] *Id.* at 8 ¶¶ 30, 32.

[35] *Id.* at 7–8 ¶ 29.

[36] ECF 59.

[37] ECF 72; ECF 73.

[38] ECF 73 at 2–5.

[39] ECF 59 at 6 ¶¶ 22–23, 14–15 ¶¶ 60–61, 69.

[40] *Id.* at 5.

[41] ECF 72 at 1–2.

[42] *Id.* at 1; ECF 73 at 1.

[43] ECF 77 at 29 ¶ 112.

[44] *Id.* at 32 ¶ 128.

[45] *Id.* at 21–27 ¶¶ 75–99.

[46] ECF 78 at 1; ECF 80 at 1. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint under

the plausibility pleading standard. *Zanetich v. Wal-Mart Stores E., Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). A plaintiff must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) we "identify allegations that . . . 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' . . . in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations . . . and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]' . . ., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted).

[47] ECF 78 at 1.

[48] ECF 79 at 10.

[49] *Id.* at 15.

[50] ECF 84 at 3–5 ¶¶ 8–14.

[51] *Davis v. UHP Projects Inc.*, 74 V.I. 525, 532 (V.I. 2021) (citing *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 983–84 (V.I. 2011)).

[52] *Id.*

[53] *See Gerald v. R.J. Reynolds Tobacco Co.*, 68 V.I. 3, 11 (V.I. Super. Ct. 2017) (explaining "[t]he Supreme Court of the Virgin Islands has adopted the Restatement (Third) of Torts: Products Liability §§ 1, 20, which provides '[o]ne engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect." (quoting *Banks*, 55 V.I. at 983–84)); *see also KH v. V.I. Water & Power Auth.*, No. 21-81, 2025 WL 961537, at *5 (D.V.I. Mar. 31, 2025) (citing Restatement (Third) of Torts: Prod. Liab. § 1 cmt. d.).

[54] ECF 77 at 29 ¶ 112.

[55] ECF 79 at 9.

[56] *See* ECF 59 at 6 ¶¶ 22–23; *see also Whitecap Inv. Corp. v. Putnam Lumber & Export Co.*, No. 10-139, 2013 WL 1155241, at *3 (D.V.I. Mar. 21, 2013) ("[A] plaintiff proceeding on a tort claim for product defect may not recover the 'loss of value or use of the product itself, cost to repair or replace the product, or the lost profits resulting from the loss o[f] use of the product' . . . . Instead, a plaintiff can only recover in tort for personal injury or damage to 'other property.'" (first quoting *Potomac Plaza Terraces v. QSC Prods.*, 868 F. Supp. 346, 354 (D.D.C. 1994); and then quoting *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 877 (1977))).

[57] *See* ECF 77 at 7 ¶¶ 25–26.

[58] *Id.*

[59] ECF 86 at 6.

[60] ECF 77 at 7 ¶ 26.

[61] *Gerald,* 68 V.I. at 11.

[62] ECF 77 at 10–11 ¶¶ 41–47.

[63] *Id.* at 6–7 ¶ 25, 8 ¶ 30.

[64] ECF 79 at 14.

[65] ECF 77 at 28 ¶ 104, 28 ¶ 106, 31 ¶ 123.

[66] *Cf. Turnbull v. Univ. of the V.I.*, No. 07-239, 2016 WL 1047893, at *5 (V.I. Super. Ct. Mar. 2, 2016) (concluding the economic loss doctrine, which "forbids a party from suing or recovering in tort for economic or pecuniary losses that arise only from breach of contract," applies in the Virgin Islands "when appropriate"); *Kirkland v. Feddersen*, No. 21-051, No. 23-050, 2023 WL 3727501, at *2 (V.I. Super. Ct. May 18, 2023) (noting the economic loss doctrine applies to negligence claims).

[67] ECF 73 at 1.

[68] ECF 79 at 10.

[69] ECF 77 at 3 ¶¶ 9–10.

[70] ECF 73 at 2.

[71] ECF 77 at 28 ¶ 104.

[72] *See Gerald*, 68 V.I. at 15 (a defect is the proximate cause of an injury only where it "in a natural and continuous sequence produces a result which would not have taken place without the" defect,

and dismissing where the pleaded chain of intervening events breaks the sequence (quoting *Sealey-Christian v. Sunny Isle Shopping Ctr.,* Inc., 52 V.I. 410, 432 (V.I. 2009))).

[73] ECF 79 at 12, 14–15.

[74] *Id.* at 10.

[75] *Id.* at 13.

[76] ECF 84 at 14.

[77] *Id.* at 17.

[78] *Benjamin v. Coral World VI, Inc.*, Nos. 13-065, 13-294, 2014 WL 2922306, at *3 (V.I. Super. Ct. June 12, 2014)(listing the elements of a negligence suit as (1) duty, (2) breach of duty, (3) causation and (4) damages)(citing *White v. Spenceley Realty, LLC*, 53 V.I. 666, 673 (V.I. 2010)).

[79] ECF 73 at 5.

[80] Although no Virgin Islands territorial court expressly adopted Restatement (Second) of Torts § 395, Judge Finch of this Court recognized manufacturers owe a duty of reasonable care to foreseeable users of their products fifteen years ago. *See Harvey v. Sav-U Car Rental*, No. 07-115, 2010 WL 2949570, at *4 (D.V.I. July 21, 2010)("TOYOTA, as the manufacturer of the Subject Vehicle, had a duty of care to Plaintiff.") The parties do not offer a reason why we would not accept this understanding nor do they offer a *Banks* analysis allowing us to disregard Judge Finch's analysis.

[81] *Aubain v. Kazi Foods of the V.I., Inc.*, 70 V.I. 943, 948–49 (V.I. 2019).

[82] *See* Restatement (Second) of Torts § 395 ("A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.").

[83] *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 756–57 (V.I. 2014).

[84] *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (V.I. 2014).

[85] *Gumbs-Heyliger v. CMW & Assocs. Corp.*, 73 F. Supp. 3d 617, 625 (D.V.I. 2014) ("In a line of cases beginning with *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011), the Supreme Court of the Virgin Islands held that, in the absence of Supreme Court precedent on a common law rule, courts in the Virgin Islands must conduct what has become known as a "*Banks* analysis" to determine which legal standard to adopt.").

[86] We first studied whether judges applying Virgin Islands law have long treated negligence and strict products liability as distinct theories of recovery. Judge Finch over fifteen years ago (and

before the Virgin Islands Supreme Court's guidance in *Banks*) recognized a vehicle manufacturer owed a duty of care to the person suing. *Harvey v. Sav-U Car Rental*, No. 07-115, 2010 WL 2949570, at *4–5 (D.V.I. July 21, 2010). We recognize Judge Finch decided *Harvey* a year before *Banks*. But his analysis shows how judges applying Virgin Islands Law addressed a manufacturer's duty to those its products may harm.

So we must also look to guidance after the Virgin Islands Supreme Court's 2011 analysis in *Banks*. The Virgin Islands Supreme Court adopted parts of the Restatement (Third) of Torts governing liability without fault. It adopted sections 1 and 20 for a commercial lessor, and section 2 with its three product defect categories. *See Banks*, 55 V.I. at 981–86; *Davis v. UHP Projects, Inc.*, 74 V.I. 525, 533–36 (V.I. 2021); *see also Tutein v. Ford Motor Co.*, 67 V.I. 34, 42–43 (V.I. Super. Ct. 2016); *Gerald v. R.J. Reynolds Tobacco Co.*, 68 V.I. 3, 56–83 (V.I. Super. Ct. 2017). But no judge addressed the care a manufacturer must use in the making of a product. The first factor shows judges here have long recognized a manufacturer's duty to those its products may harm but no judge defined the manufacturer's duty after *Banks*.

We next studied the reasoning from other judges addressing the issue. Almost every judge across the United States recognizes a manufacturer must use reasonable care in making, inspecting, and testing its products. Judge Cardozo held a maker owes a duty 110 years ago to anyone it should expect will use a product dangerous if built without care. The duty does not depend on a contract with the maker. *MacPherson v. Buick Motor Co.*, 111 N.E. 1050, 1053–54 (N.Y. 1916). Judges continue to apply the same rule. The law imposes a duty to use reasonable care upon the maker of an article for sale or use to prevent defects and the duty calls for skill and care in the making and for inspecting or testing to find defects. *See, e.g.*, *Densberger v. United Techs. Corp.*, 297 F.3d 66, 70–71 (2d Cir. 2002) (applying Connecticut law); *Richter v. Limax Int'l, Inc.*, 45 F.3d 1464, 1468–69 (10th Cir. 1995) (applying Kansas law);; *Brocklesby v. United States*, 767 F.2d 1288, 1295–96 (9th Cir. 1985) (applying New York law); *Ford Motor Co. v. Zahn*, 265 F.2d 729, 731 (8th Cir. 1959) (applying Minnesota law); *Lagalo v. Allied Corp.*, 577 N.W.2d 462, 465 n.8 (Mich. 1998); *Massey-Ferguson, Inc. v. Wells*, 383 A.2d 640, 642–43 (Del. 1978); *Norton Co. v. Harrelson*, 176 So. 2d 18, 21–22 (Ala. 1965); *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 530 S.E.2d 321, 326 (N.C. Ct. App. 2000); *Valentine v. Baxter Healthcare Corp.*, 81 Cal. Rptr. 2d 252, 264 (Cal. Ct. App. 1999).

The parties do not show us, and our research cannot find a judge who rejects the duty

The third step of the *Banks* analysis asks us to determine the soundest rule for the Virgin Islands. We find the seemingly unanimous rule is the soundest rule for the Virgin Islands. The rule fits the characteristics of the Virgin Islands. Judge Francois weighed those characteristics in adopting an implied warranty of good workmanship. *Bluewater Constr., Inc. v. Hill*, 76 V.I. 15, 27–39 (V.I. Super. Ct. 2022). Judge Francois looked to the limited size of the islands and the demands of building on each of them. *Id.* at 35–36. Every island must bring in some of its building materials. *Id.* at 35 n.76. Judge Francois held a rule reaching only the first buyer would do little for Virgin Islanders and other consumers here. *Id.* at 35–36. The same theory applies today. Ms. Easterday did not choose her meter. She cannot watch Itron build one, weigh its quality controls, inspect its hidden components, or learn whether Itron tested it. A duty running to foreseeable users rather

than to buyers alone reflects how people in the Virgin Islands come to use the products harming them.

The rule places responsibility on the party most able to bear it. The Virgin Islands Supreme Court reasoned the same way in holding a commercial lessor is better able than the consumer to keep defective products from circulating and better able to spread the loss.[86] *Banks*, 55 V.I. at 984–85. The rule requires care rather than a flawless product. And the person suing must still prove breach, cause, and damages.[86]

We adopt the rule. A manufacturer owes foreseeable users and persons a manufacturer should expect its product's probable use will endanger a duty to use reasonable care in the making of the product including in choosing materials and components, building and assembling the product, and inspecting and testing it before sale. A manufacturer can be held liable when its failure to use reasonable care creates a harmful state in the product or leaves the state undiscovered and causes physical harm during a use the manufacturer should expect.

[87] ECF 78 at 1. Ms. Easterday's request for relief includes a passing request for us to "find[] that the principle of *res ipsa loqitur* [sic] is appropriate." ECF 77 at 32. Res ipsa loquitur allows a fact finder to infer negligence from the event itself when the event is of a kind ordinarily not occurring absent negligence, the evidence sufficiently eliminates other responsible causes including the conduct of third persons, and the negligence falls within the scope of the defendant's duty. *See Crowell v. Ritz Carlton Hotel (Virgin Islands), Inc.,* No. 12-43, 2013 WL 12250337, at *2 (D.V.I. Dec. 5, 2013) (quoting Restatement (Second) of Torts § 328D(1)). The inference does not apply here. Ms. Easterday pleads several possible causes of the fire including moisture, corrosion, batteries, capacitors, and the remote disconnect switch. ECF 77 at 8–9 ¶¶ 31–35. She also pleads the Authority possessed and controlled the meter after installation. *Id.* at 30 ¶¶ 114, 119. Her allegations do not eliminate other possible causes. Ms. Easterday may proceed on her negligent manufacturing claim but not through an inference of negligence from the fire alone.

[88] ECF 77 at 6–7 ¶¶ 25–26; *id.* at 30–31 ¶¶ 115, 119.

[89] *Turnbull*, 2016 WL 1047893, at *5 (explaining the economic loss doctrine prevents a party from recovering in tort for purely economic or pecuniary losses arising from a contractual relationship).

[90] *McCurdy v. Johnson & Johnson*, No. 23-00018, 2023 WL 10512305, at *3 (D.V.I. Oct. 16, 2023) (explaining proximate causation is an essential element of strict products liability and negligence claims).

[91] ECF 78 at 1.

[92] ECF 79 at 16.

[93] ECF 84 at 20–21.

[94] *See Isaac v. Crichlow*, 63 V.I. 38, 69 n.13 (V.I. Super. Ct. 2015) (adopting the Restatement (Second) of Torts § 908(2)).

[95] *Libien v. MIFR (Virgin Islands), Inc.*, No. ST-15-CV-107, 2016 WL 7017642, at *6 (V.I. Super. Ct. Nov. 28, 2016) (quoting *Melchior v. Univ. of the V.I.*, No. ST-15-CV-473, 2016 WL 2639186, at *4 (V.I. Super. Ct. Apr. 27, 2016))

[96] ECF 73 at 5.

[97] ECF 77 at 32 ¶ 127.

[98] *Id.* at 32 ¶ 126.

[99] ECF 80 at 1.

[100] ECF 81 at 4.

[101] *Id.* at 3–9; *KH v. V.I. Water & Power Auth.*, Nos. 25-1916, 25-3435, 2026 WL 1649317 (3d Cir. June 8, 2026).

[102] ECF 83 at 2–3.

[103] *Id.* at 2.

[104] *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006).

[105] *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) (holding utility customers possess a protected property interest in continued service where state law permits termination only for cause); *K.H. v. V.I. Water & Power Auth.,* No. 21-81, 2025 WL 961537, at *4 (D.V.I. Mar. 31, 2025) (the Authority's customers hold a protected property interest "because the Virgin Islands Ratepayers' Bill of Rights, 30 V.I.C. § 1a, limits termination of service"); V.I. Code Ann. tit. 30, § 1a(b)(6)–(10).

[106] *See Memphis Light*, 436 U.S. at 14–15, 22 (explaining due process requires notice of the availability of dispute procedures and "an opportunity to present [a] complaint to a designated employee empowered to review disputed bills and rectify error" before termination).

[107] *See Iqbal*, 556 U.S. at 678; *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016) (accepting well-pleaded allegations as true and drawing reasonable inferences for the plaintiff).

[108] *K.H.,* 2025 WL 961537, at *6. (denying the Authority's motion to dismiss a materially similar procedural due process claim without requiring the ratepayers to plead the date of each dispute or the identity of the employee who denied review)

[109] ECF 77 at 5–6 ¶¶ 18–20, 22–24.

[110] *Id.* at 6 ¶ 24 (alleging the June 16, 2023 Commission inspection occurred "[i]n response to her telephone calls"); *id.* at 3 ¶ 9 (January 27, 2025 termination).

[111] *See id.* at 5 ¶ 19, 3 ¶ 9; *cf. Memphis Light*, 436 U.S. at 18–22.

19

[112] ECF 81 at 5–6.

[113] *See Alvin v. Suzuki*, 227 F.3d 107 (C.A.3 (Pa.),2000) (explaining a procedure is unavailable only where access "is absolutely blocked or there is evidence that the procedures are a sham").

[114] *K.H.,* 2025 WL 961537, at *6–7.

[115] *K.H. v. V.I. Water & Power Auth.*, No. 21-81, 2025 WL 3140571, at *1 (D.V.I. Nov. 10, 2025).

[116] *Id.*

[117] *See KH*, 2026 WL 1649317, at *4–5.